**STATE of Missouri, Respondent,**

v.

**Charles Wayne VERMILLION, Appellant.**

**No. 55618.**

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Pierce, Duncan, Hill & Russell, Kansas City, for appellant.

BARDGETT, Judge.

On a prior appeal this cause was "reversed and remanded for the conduct of a hearing on the question of the applicability of the Second Offender Act and for a re-

sentencing of the defendant or the granting of a new trial on all issues, depending upon the court's finding on such hearing." See State v. Vermillion, Mo., 446 S.W.2d 788.

■ The occasion for the remand was the failure of the trial court to enter its finding that would make the Second Offender Act, § 556.280, V.A.M.S., applicable. The reason that the sentence was set aside was because, in this case, the circuit judge did not have the power to assess punishment unless the Second Offender Act was applicable. If the Act is not applicable then the defendant is entitled to have the issue of punishment submitted to the jury.

On remand the hearing ordered by this court was conducted and the same judge who presided over the trial found that the Second Offender Act was applicable and sentenced appellant to fifty years—the same sentence as was originally imposed. This court has jurisdiction of this appeal from a felony conviction under Art. V, § 3, Mo.Const., V.A.M.S., where the notice of appeal was filed prior to January 1, 1972.

Immediately after the first witness was sworn, the appellant, through his attorney, stated that he was applying to the court to have the court disqualify himself as being prejudiced in this case. The court observed that the hearing was part of the same trial and that he was required to make a specific finding as to the alleged prior conviction. The judge said that if he thought he could disqualify himself he would do so, but he did not believe he could do so because the hearing was part of the same trial. Defendant asked the judge if the judge thought he was prejudiced and the judge replied that he thought not.

The hearing proceeded with the court again hearing evidence as to the alleged prior conviction. The court specifically found that appellant had been convicted of robbery first degree on January 25, 1965; that appellant was sentenced to five years imprisonment; that appellant was received and imprisoned in the Missouri Department of Corrections; that appellant's sentence was thereafter commuted and he was released on December 21, 1967, and concluded that the Second Offender Act was applicable. The judge then resentenced appellant to the same term he had previously imposed, to wit, fifty years imprisonment. The instant offense of robbery first degree was committed January 4, 1968, about two weeks after appellant was released from the penitentiary on December 21, 1967.

Point one on this appeal challenged the sufficiency of the evidence as to the prior conviction on the ground that the certified transcript of Serial Record from the Department of Corrections, state's exhibit 4, which was utilized in part to support the applicability of the Second Offender Act, contained names other than appellant's and it could not be determined whether the exhibit referred to appellant or someone else. Subsequently it came to the attention of appellant's attorney on this appeal, who did not represent appellant in the trial court, that exhibit 4 referred only to Charles Wayne Vermillion. Exhibit 4 has been filed in this court and it refers only to Charles Wayne Vermillion. Appellant has abandoned this point.

Appellant's second point is that the trial court erred in failing to disqualify himself and in holding that appellant's disqualification request was untimely.

Criminal Rule 30.12, V.A.M.R., provides in part that a judge shall be deemed incompetent and disqualified to try a criminal case when he is interested or prejudiced; that he may disqualify of his own initiative; and he shall be disqualified if an affidavit be filed stating that a party cannot have a fair and impartial trial by reason of interest or prejudice of the judge. Such affidavit must be filed at a prescribed time prior to swearing a jury, and only one such affidavit may be filed

by the same party in the same case and shall be made as to only one of the judges of the court involved.

A number of criminal causes have been remanded where the trial court did not make the specific findings necessary to support the applicability of the Second Offender Act. Sec. 556.280, RSMo 1969, V.A.M.S. Cf. State v. Hill, Mo., 371 S.W.2d 278; State v. Garrett, Mo., 416 S.W.2d 116; State v. Dixon, Mo., 434 S.W.2d 564; State v. Holmes, Mo., 434 S.W.2d 555.

■ Subsequently the court en banc reconsidered the procedure employed in the above-cited cases and concluded that where the evidence clearly establishes the elements of the Second Offender Act's applicability and where the court's order recites a finding of a previous felony conviction and that under the evidence the Second Offender Act is applicable, this court will not remand for the entry of other specific findings. State v. Blackwell, Mo.Banc, 459 S.W.2d 268.

■ Thus, whether or not State v. Vermillion, Mo., 446 S.W.2d 788, would have been remanded had it been decided after State v. Blackwell, supra, is problematical at best. In any event, State v. Blackwell makes it clear that the determination of the applicability of the Second Offender Act is not a proceeding separate from the trial of the case itself but constitutes an integral part of the original trial. Therefore, the findings entered by the court on remand in this case constituted a part of the original trial.

■ That part of Criminal Rule 30.12, V.A.M.R., which *requires* a judge to disqualify himself upon an affidavit being filed in which it is *alleged* that a party cannot have a fair and impartial trial by reason of the interest or prejudice of the judge has no application to the hearing involved in this case. The mere filing of the affidavit in proper time before trial requires that the judge disqualify himself even though the judge is, in fact, neither interested nor prejudiced in any way at all. State ex rel. McNary v. Jones, Mo.App., 472 S.W.2d 637. That procedure was available to the appellant prior to the beginning of his trial but not after the trial began and is not available with respect to hearings occurring after the trial begins which hearings constitute part of the trial itself, such as the instant hearing.

Smith v. Smith, Mo.App., 435 S.W.2d 684, and State v. Tyler, Mo., 440 S.W.2d 470, are not applicable. *Smith* was a motion to modify a divorce decree, and *Tyler* was a motion under S.Ct. Rule 27.26. A motion to modify a divorce decree and a proceeding under Rule 27.26 are original proceedings and are independent of the original divorce action and of the original criminal cause and are not integral parts of the divorce trial nor the criminal trial.

■ In this case the "trial" began June 24, 1968, when the jury panel was sworn for voir dire examination. It was at that point in time that both parties lost the right to require the automatic disqualification of the judge merely upon the affidavit of interest or prejudice. Criminal Rule 30.12, V.A.M.R.

When appellant requested the court to disqualify, the court said, inter alia, "I don't think that I can disqualify myself. It's during the same trial. I think that I have to make a finding, a specific finding as to the prior convictions or conviction, and once having done that, to make a re-sentencing. That is what it was sent back for. I don't know how anybody else could do it. If I thought I could do it, I would disqualify myself. I don't think I can. This is part of the same trial. It is merely on an evidentiary point. Yes, if I found the evidence insufficient of prior convictions I certainly could give a new trial. If I found it sufficient I would not give a new trial, because the trial in this case has already been had. It's merely a matter of the resentencing."

■ At another point appellant asked the judge if he, the judge, thought he was

prejudiced against appellant, and the judge said that he did not think so. The judge's remark that he would disqualify himself if he thought he could do so had reference to appellant's position that the judge must disqualify himself upon the mere allegation of prejudice and did not indicate in any way that the judge was, in fact, prejudiced. The trial judge was correct in his ruling. After the trial begins the trial judge should not disqualify himself in the absence of actual prejudice. In this case there was no showing of actual prejudice. Of course the defendant is entitled to a fair and impartial judge and jury, and his right thereto was not violated in this case.

■ Appellant's third point is that the sentence of fifty years subjected him to cruel and unusual punishment and, therefore, violated his rights under Amend. 8, U.S.Const., and Art. I, § 21, Mo.Const. 1945. The new sentence imposed, following remand and after this court's direction relating to findings concerning the Second Offender Act had been complied with, was the same sentence imposed originally. Full credit for all time served under the original sentencing was allowed. The sentence was within the statutory range of punishment for robbery in the first degree. Sec. 560.135, RSMo 1969, V.A.M.S.

Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793, and Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630, relied on by appellant, are not in point. Those cases declared invalid the punishment provisions of certain *statutes* as, inter alia, in violation of Amend. 8, U. S.Const. Here, as in State v. Johnson, Mo., 457 S.W.2d 795, the appellant is not urging that the *statute* under which he was sentenced in itself provides for cruel and unusual punishment but contends that the fifty-year *sentence* imposed is excessive and, as excessive, constitutes cruel and unusual punishment. In *Johnson* this court said, loc.cit. 798: "The United States Su-

preme Court held later in Blockburger v. United States (1932), 284 U.S. 299, 52 S. Ct. 180, 76 L.Ed. 306, that the apparent severity of a sentence within the limits prescribed by statute does not warrant an appellate court to interfere with it. This Court has followed the ruling in Blockburger, supra, to be the law of the State of Missouri."

Other cases cited by appellant have been considered; however, since the Missouri law on the subject is clear, they are of no assistance to the appellant. The point is overruled.

The judgment is affirmed.

HOLMAN, P. J., concurs.

SEILER, J., concurs in result in separate concurring opinion filed.

SEILER, Judge (concurring in result).

I concur in the result reached in this case because I must agree that under the decisions of this court, the claim that the sentence of fifty years is excessive is futile, simply because the sentence imposed is within the statutory limits. Perhaps the sentence is not excessive in this particular case because this was defendant's second armed robbery, and, in addition to that, he had been convicted of auto theft, assault, transportation of a stolen automobile in interstate commerce, and statutory rape.

However, I wish to add that in view of the inordinate disparity in sentences which we see in cases on appeal, I doubt the soundness of the rule which gives the trial judge absolute discretion in these matters with no review whatever as to the length of sentence so long as it is within the statutory range. It has been said "that in no other area of our law does one man exercise such unrestricted power. No other country in the free world permits this condition to exist." [1]

---

1. The Missouri law does not provide that all sentences shall be assessed by the trial judge. However, when we consider the large number of guilty pleas, the large

The subject is discussed in President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: The Courts 23–24 (1967):

"The problem of disparity arises from the imposition of unequal sentences for the same offense, or offenses of comparable seriousness, without any reasonable basis. The existence of unjustified disparity has been amply demonstrated by many studies. It is a pervasive problem in almost all jurisdictions. In the Federal system, for example, the average length of prison sentences for narcotics violations in 1965 was 83 months in the 10th Circuit, but only 44 months in the 3rd Circuit. During 1962 the average sentence for forgery ranged from a high of 68 months in the Northern District of Mississippi to a low of 7 months in the Southern District of Mississippi; the highest average sentence for auto theft was 47 months in the Southern District of Iowa, and the lowest was 14 months in the Northern District of New York.

"Disparity among judges sitting in the same court is illustrated by the findings of a recent study in the Detroit Recorder's Court. Over a 20-month period in which the sample cases were about equally distributed among the 10 judges, 1 judge imposed prison terms upon 75 to 90 percent of the defendants whom he sentenced while another judge imposed prison sentences in about 35 percent of the cases. One judge consistently imposed prison sentences twice as long as those of the most lenient judge. The study also showed that judges who imposed the most severe sentences for certain crimes also exhibited the most liberal sentencing policy for other offenses.

". . .

number of cases tried under the second offender act, and the procedure approved in State v. Brown, (Mo.Sup. banc) 443 S.W.2d 805, by which the jury is permitted to turn the sentencing responsibili-

"Unwarranted sentencing disparity is contrary to the principle of even-handed administration of the criminal law. As Attorney General Robert H. Jackson stated: 'It is obviously repugnant to one's sense of justice that the judgment meted out to an offender should be dependent in large part on a purely fortuitous circumstances; namely, the personality of the particular judge before whom the case happens to come for disposition.' Unjustified disparity adversely affects correctional administration. Prisoners compare the sentences, and a prisoner who is given cause to believe that he is the victim of a judge's prejudices often is a hostile inmate, resistant to correctional treatment as well as discipline."

In the Standards Relating to Appellate Review of Sentences, adopted by the American Bar Association, judicial review of sentences is held to be sound, desirable and practical. The Standards provide, in part, as follows:

"PART I. GENERAL PRINCIPLES

"1.1 Principle of review.

(a) In principle, judicial review should be available for all sentences imposed in cases where provision is made for review of the conviction. This is specifically meant to include

(i) review of a sentence imposed after a guilty plea equivalent, if the case is one which review of a conviction would be available had the case gone to trial;

(ii) review of a sentence imposed by a trial judge, a trial jury, or the two in combination; . . .

ty over to the trial judge, we see in actual practice that most sentences are fixed by the trial judge and very few are set by the jury.

" . . .

"1.2   Purposes of review.

The general objectives of sentence review are:

(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

(iv) to promote the development and application of criteria for sentencing which are both rational and just.

"PART II.   AVAILABILITY OF REVIEW

"2.1   Reviewing court.

In general, each court which is empowered to review the conviction should also be empowered to review the disposition following conviction . . . ."

The Missouri rule that we will not review sentences is judge made law and as such is subject to revision by the court. It seems to me that in a proper case, we should exercise the power which I believe we have to reduce a sentence, and we should not consider ourselves powerless to act merely because the sentence imposed is within the statutory range.[2]

---

2. In the case before us, the trial judge gave 50 years for first degree robbery. At the same handdown this opinion is being released, I note there are nine other first degree robbery cases. The sentences imposed range from six to 99 years. In the last bound volume of Southwestern Second Series, Missouri cases only, 477–479 S.W.2d, the sentences in first degree robbery cases vary from five years to life. Time does not permit further research into Missouri sentences, but there can be no doubt that sentencing policies at the trial level vary widely.